Argued and submitted May 15, affirmed September 11, reconsideration denied
November 6, 1991, petition for review denied January 21, 1992 (312 Or 588)

# STATE OF OREGON,
*Respondent,*

*v.*

# ROBERT LEROY NILES,
*Appellant.*

(C 89-08-34194; CA A64402)

817 P2d 293

Gary D. Babcock, Salem, argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals his conviction for first degree rape. ORS 163.375. The issue is whether evidence of the victim's prior sexual conduct with others should have been admitted. We affirm.

Certain facts are undisputed. The victim worked as a waitress from 8 a.m. until 2:30 p.m. at the Candlelight restaurant. She then joined some friends for drinking, dancing, rolling dice and "playing pulltabs" in the Candlelight's lounge. Her boyfriend reached her by telephone and told her to call him when she needed a ride home. Around 8 p.m., she called him, but no one answered. Defendant, who the victim knew as an acquaintance and "a regular" at the lounge, offered to give her a ride. She accepted. Defendant told her that he needed to go to his apartment first, and she said that that was fine. When they arrived, she went into defendant's apartment to use the bathroom.

The remaining facts are in dispute. The victim testified that, after she left the bathroom, defendant pushed her against a wall, struck her, forced her into the bedroom and raped her. Defendant testified that they had a couple of drinks, had consensual sex in his bedroom and then returned to the Candlelight.

At trial, the state characterized the victim as a small town girl who is a very trusting individual, "perhaps naive, perhaps too trusting. She's friendly. She likes the defendant. She seems to like people pretty easily, to make friends." The victim testified that she was the type of individual who did not lock her doors, would leave her keys in the car and would open the door of her house without looking to see who was knocking. She said that she and defendant had been friends, but had not been romantically involved at any time. At trial, defendant testified that he and the victim had once before had sexual intercourse at his apartment. The defense theory was that the victim had accused him of rape on this occasion only because she feared that her boyfriend would be angry that she was returning home so late.

At trial, defendant unsuccessfully sought to introduce the testimony of two men who were patrons of the Candlelight. According to an offer of proof, they would have

testified that they had each had consensual sex with the victim after she had been drinking. One of the men also would have testified that, at 3:30 on the afternoon of the alleged rape, the victim was intoxicated. The trial court denied defendant's pre-trial motion to offer evidence of the victim's prior sexual relations with the two Candlelight patrons.

■    Defendant assigns error to that ruling, and presents two arguments. First, he contends that the testimony was relevant to show the victim's motive for accusing him. OEC 412(2)(b)(A).[1] Second, he claims that the state opened the door for the evidence to come in when it misrepresented the victim's "sexual character."[2] We address the second argument first. Defendant contends that the state's evidence about the victim being a trusting, naive and friendly individual "put [her] sexual character and her willingness to give consent in issue." He claims that "all of the superlatives used to describe the complaining witness were used to show that she would not consent to have sex with defendant." We disagree. The state's evidence that the victim was a "small town girl" cannot properly be characterized as representing *anything* about her inclination to engage in casual, consensual sex. Although the victim's description of herself may have presented her in a positive light, it did not put her sexual character in issue, because it was unrelated to her sexual conduct. Neither did it "show that she would not consent" to sex with defendant. The trial court concluded that the state had not opened the door to defendant's evidence, because it had not presented any evidence about the victim's sexual conduct, had not suggested that she was faithful to her boyfriend and had not described her as an individual who avoided sexual activity with others. We agree with the trial court's assessment. The victim's testimony merely explained

---

[1] OEC 412(2)(b) provides that specific act evidence of a victim's past sexual behavior is inadmissible in a rape trial, unless the evidence:

"(A) Relates to the motive or bias of the alleged victim; or

"(B) Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C) Is otherwise constitutionally required to be admitted."

[2] Defendant also argues that, because the victim has previously engaged in consensual sexual relationships, that fact should be admissible to show that she consented in *this* case. That is precisely the type of argument that Oregon's Rape Shield Law, OEC 412, prohibits.

why she had accepted a ride with defendant and why she had entered his apartment.

Defendant cites *State v. Reiter,* 65 Or App 304, 672 P2d 56 (1983), in which the defendant was convicted of rape and sodomy, and the only issue for the jury was whether the victim had consented. The trial court would not allow the defendant to testify that the victim had consented to intercourse with him one week before the alleged rape. We reversed, saying that the state had

> "elicited [victim's] testimony that she knew defendant only as a friend. In response, defense counsel intended to impeach that testimony by inquiring into the [victim's] past sexual relations *with defendant.* The need to cross-examine was apparent, because [victim's] testimony * * * necessarily implied a lack of prior sexual activity with defendant." 65 Or App at 308. (Emphasis supplied.)

Defendant's reliance on *Reiter* is misplaced. Here, the state did not object to defendant presenting evidence of *his* prior sexual relationship with the victim. Defendant was allowed to testify that they had engaged in consensual sex with her once before the charged incident. The rule set forth in *Reiter* was followed in this case.

■   We are also unpersuaded by defendant's argument that evidence of the victim's other sexual relationships is relevant to show that her motive for accusing him was fear of her boyfriend's reaction to her late return home on the night of the incident. We see no logical connection between two prior incidents of consensual sexual activity and the victim's alleged motive to accuse defendant in this case, and defendant offers no rationale to explain the relation. Evidence about the prior incidents did not make it more probable that she was motivated to fabricate, or that she was biased against defendant. OEC 412(2)(b)(A). It was not relevant, because it did not show "a particularized motive or bias against the person offering the evidence." *State v. Wright,* 97 Or App 401, 407, 776 P2d 1294, *rev den* 308 Or 593 (1989).

■   Defendant also states, in passing, that the trial court's rulings denied him his "constitutional rights to confrontation, compulsory process and to present exculpatory evidence." That argument fails for several reasons. First, defendant offers no analysis or argument to advance his

claim. He says only that, "[g]iven the State's burden of proof, introducing evidence of the complainant's past behavior is absolutely necessary to fulfill defendant's rights to confrontation and compulsory process." That statement fails to articulate why the evidence was constitutionally required to be admitted. *See State v. Wattenbarger,* 97 Or App 414, 418, 776 P2d 1292, *rev den* 308 Or 331 (1989). Further, defendant was provided ample opportunity to attempt to impeach the victim. *State v. LeClair,* 83 Or App 121, 130, 730 P2d 609 (1986), *rev den* 303 Or 74 (1987). His cross-examination suggested that she remembered little about the night of the incident, brought to light the extent to which her testimony conflicted with the statements of various defense witnesses, and implied that her relationship with her boyfriend had motivated her to falsely accuse defendant. Finally, given that the victim's sexual history was not relevant to establish defendant's motive theory, the constitutional argument is rendered moot. *State v. Bender,* 91 Or App 420, 423, 755 P2d 151, *rev den* 306 Or 527 (1988).

Affirmed.